Fernando **JACQUEZ**, et al.,
Plaintiffs-Appellees,

v.

**R.K. PROCUNIER**, et al.,
Defendants-Appellants.

No. 86–2273.
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 10, 1986.

Jim Mattox, Atty. Gen., Michael F. Lynch, Asst. Atty. Gen., Austin, Tex., for defendants-appellants.

Monty B. Roberson, Rallis, Silva & Silva, Antonio V. Silva, El Paso, Tex., for plaintiffs-appellees.

Before REAVLEY, JOHNSON and DA-VIS, Circuit Judges.

REAVLEY, Circuit Judge:

This § 1983 case concerns the right of state officials, who enjoy qualified immunity, to avoid the potentially arduous discovery process when complainants do not plead facts that, if true, would defeat a claim of qualified immunity. The plaintiff, administrator for the estate of Rafael Jacquez, deceased, a former prisoner in Texas, brought this action alleging that the defendants—the Director of Texas prisons, the members of the Texas Board of Corrections, and the Warden—acted intentionally, maliciously and negligently in regard to the circumstances leading to decedent's death. Decedent was murdered by two fellow inmates while incarcerated in a Texas prison. The defendants denied any complicity in decedent's death, and moved for dismissal of the plaintiff's complaint, contending that it failed to enunciate facts with sufficient particularity to meet the heightened pleading requirements for cases raising an issue of qualified immunity. The district court denied the defendants' motion to dismiss and they now appeal that judgment. Because plaintiff's pleadings allege only conclusions and fail to state a cause of action against any defendant, and because counsel for plaintiff stands on those pleadings in this appeal without suggesting any specificity that could be added to the claim if allowed to replead, we reverse and direct the district court to render final judgment in this action.

I.

On March 2, 1983, Rafael Jacquez, an inmate of the Texas Department of Corrections, was brutally attacked and murdered by two fellow prisoners. Fernando Jacquez, administrator for the estate of Rafael Jacquez, filed suit in the Southern District of Texas in October 1984, alleging a claim under 42 U.S.C. § 1983 for deprivation of decedent's rights as secured by the Fourteenth Amendment to the United States Constitution as well as a pendent state claim based on the Texas Tort Claims Act. The complaint avers that decedent's death was a result of "a pattern of conduct by prison guards [and inmates] at the Texas Department of Corrections" and that defendant Texas state prison officials "knew of this misconduct, malfeasance, acts and/or omissions ... and did nothing to stop it or in fact, condoned said misconduct, malfeasance, acts and/or omissions." The complaint states that the defendants acted "willfully, knowingly, purposely and maliciously" to deprive decedent of his rights. However, the complaint does not elaborate any theory or state any facts that would support the plaintiff's claim that the defendants intentionally deprived Jacquez of

any right or played any role, directly or indirectly, in his death.

In September 1985, after receiving twenty-nine interrogatories and requests for production, the defendants filed a motion for a protective order and a motion to dismiss the plaintiff's complaint, basing both motions on Federal Rule of Civil Procedure 12(b)(6). The defendants objected to the complaint on the ground that it did not allege facts that would support a cause of action against public officials claiming qualified immunity. The district court denied these motions and the defendants appealed. On appeal, the defendants request a final judgment dismissing this action because the plaintiff has had fair opportunity to plead his "best case," through the complaint and his response to the defendants' motion to dismiss, and he has never stated to this date what the basis is for his cause of action.

## II.

Both parties agree that this court has jurisdiction to consider this appeal since the district court, in denying the motion to dismiss, effectively denied the defendants' claim of immunity. Recently, we held that "an order which declines or refuses to rule on motion to dismiss on the basis of a claim of immunity 'is an appealable "final decision" within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.'" *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir.1986), *quoting Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985).

## III.

We must balance the right of state officials to be free from frivolous suits against the right of complainants to be fairly heard. Qualified immunity shields state officials from liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This doctrine allows state officials to carry out

their duties free of fear that their every decision might be tried before a court of law. To do otherwise, in the words of Learned Hand, would "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949). Yet, this important right must be considered with due regard to a complainant's right to have his day in court. Indeed, a court should not dismiss a case "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In recent cases we have struck a balance between these conflicting rights by requiring plaintiffs to plead facts with particularity before they may subject public officials to trial *or* the vagaries of modern pretrial discovery. *Elliott v. Perez*, 751 F.2d 1472, 1478 (5th Cir.1985); *see also Hobson v. Wilson*, 737 F.2d 1, 30 (D.C.Cir.1984) ("every ... circuit has articulated a requirement of particularity on pleading for civil rights complaints").

■ It must be emphasized that qualified immunity is an *immunity from suit*, and extends beyond just a defense to liability to include all aspects of civil litigation. As the Court in *Mitchell v. Forsyth* stated, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to *dismissal before the commencement of discovery*." 472 U.S. at ——, 105 S.Ct. at 2816 (emphasis added). Courts have an obligation, therefore, to carefully scrutinize a plaintiff's claim before subjecting public officials to the burdens of broad-reaching discovery. *Id.*

■ However, the *Conley* standard "exhorts us to excuse mere artless drafting and to overlook superfluous argument in the interest of locating the substance of the pleader's claim." *Jamieson by and Through Jamieson v. Shaw*, 772 F.2d 1205, 1209 (5th Cir.1985). But even the most sympathetic reading of plaintiff's pleadings uncovers no theory and no facts that would

subject the present defendants to liability. In cases such as this one, plaintiffs must show, at least, that the defendants' conduct manifested a callous indifference to the prisoner's rights. *Johnston v. Lucas,* 786 F.2d 1254, 1260 (5th Cir.1986). Stripped of its conclusory allegations and the technical buzz words liberally sprinkled throughout, the plaintiff's pleadings allege, at best, a negligence action. Recently, the Supreme Court specifically held that a § 1983 civil rights claim cannot be based on a negligent failure to protect. In *Davidson v. Cannon,* — U.S. —, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986), a prison official failed to take action after receiving a note from an inmate warning that he had been threatened by another inmate; later, the inmate was seriously injured in an attack by the threatening inmate. The Court declared that "the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." *Id.* at —, 106 S.Ct. at 671. Here, the plaintiff does not allege that a warning was received, and omits any explanation of how or in what way the defendants "knew" or "intended" the attack. The gravamen of the plaintiff's claim appears simply to be that the defendants breached their duty to protect the decedent. When the substance of a plaintiff's claim is negligence, "[w]hatever other provisions of state law or general jurisprudence he may rightly invoke, the Fourteenth Amendment to the United States Constitution does not afford him a remedy." *Daniels v. Williams,* — U.S. —, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986).

Ordinarily, when a complaint does not establish a cause of action in a case raising the issue of immunity, a district court should provide the plaintiff an opportunity to satisfy the heightened pleading requirements of these cases. In *Elliott v. Perez* we explained that "[o]nce a complaint against a defendant state [officer] adequately raises the likely issue of immunity—qualified or absolute—the district court should on its own require of the plaintiff a detailed complaint alleging with particularity all material facts on which he contends he will establish his right to recovery, which will include detailed facts supporting the contention that the plea of immunity cannot be sustained." 751 F.2d at 1482. Dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified.

At the same time, if the protections afforded public officials are not to ring hollow, plaintiffs cannot be allowed to continue to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold. Such a protracted process is likely to disrupt public officials from their duties as much as discovery itself. At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit. In *Morrison v. City of Baton Rouge,* 761 F.2d 242 (5th Cir.1985), for example, this court dismissed an action because "the specific allegations of the amended complaint constitute the plaintiff's *best case* for demonstrating that [the defendant] acted outside the scope of [his] immunity." *Id.* at 246 (emphasis added). There was no reason to remand for a further factual statement in *Morrison* since the plaintiffs had had fair opportunity to make out their case in their supplemental complaint.

Although the plaintiff here has not filed a supplemental complaint, he did file an extensive response to the defendants' motion to dismiss. This pleading responds specifically to the defendants' objection that the complaint contains insufficient facts to maintain a cause of action. It repeats verbatim sections of the complaint the plaintiff believes satisfy the heightened pleading requirements of § 1983 actions, and engages in extensive repleading of the "facts" and law he thinks relevant. For example, it alleges "an intentional deprivation of the Plaintiff's life and gross negligence in Defendant's (sic) acts or failure to act in the circumstances of the death." It goes on to allege "that the Defendants knew of the misconduct by the prison inmates and prison guards and did nothing to

stop it and in fact condoned such conduct." But nowhere in this pleading does the plaintiff cite any conduct (or specific omissions) that would causally link the defendants to decedent's death. In order to successfully plead a cause of action in § 1983 cases, plaintiffs must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged.

The plaintiff objects to a dismissal at this stage because he claims he did not have fair notice or opportunity to amend his complaint. But the plaintiff himself contradicts this very contention. Repeatedly in his response to the motion to dismiss and again in his brief to this court, the plaintiff declares the adequacy of his complaint or, alternatively, that any inadequacy is remedied by his later pleading. From the moment the defendants filed their answer in December 1984, the plaintiff was on notice that his complaint might not be sufficient to state a cause of action. The fact that he was well aware of this is demonstrated by his extensive treatment of the *Elliott* pleading requirements in his response to the defendants' motion to dismiss. This pleading evidences a clear effort to cross the required threshold. We must assume, therefore, that the plaintiff pleaded his *best case. See Morrison,* 761 F.2d at 246.

Morrison does not apply only to cases where a plaintiff has actually amended his complaint; it extends to any case where the pleadings, when viewed under the individual circumstances of the case, demonstrate that the plaintiff has pleaded his *best case.* When considering the sufficiency of pleadings in § 1983 actions a court should consider *all* of the pleadings before it. However, a court must give due consideration to all of the circumstances surrounding those pleadings. For example, it has always been this court's policy to give the greatest latitude to *pro se* prisoner complaints in § 1983 actions. *See, e.g., Watson v. Ault,* 525 F.2d 886, 892 (5th Cir.1976) (approving the district court's use of a questionnaire in order to develop the factual basis for the complaint). Neverthe-

less, once given adequate opportunity, even a *pro se* complaint must contain specific facts supporting its conclusions. *Spears v. McCotter,* 766 F.2d 179 (5th Cir.1985); *Green v. McKaskle,* 788 F.2d 1116 (5th Cir.1986).

In this case, the plaintiff was represented by counsel from the start. The heightened pleading requirements for actions arising under § 1983 should have been well known to plaintiff's counsel. These requirements preceded *Elliott* by many years. *See, e.g., Arsenaux v. Roberts,* 726 F.2d 1022, 1024 (5th Cir.1982) (more than conclusory allegations necessary to state a claim under § 1983), *Johnson v. Wells,* 566 F.2d 1016, 1017 (5th Cir.1978) (in § 1983 action applicant must allege facts that would, if proved, warrant the relief he seeks). And even if plaintiff's counsel was unaware of this precedent at the time of the complaint, these requirements certainly were brought to counsel's attention by the defendant's motion to dismiss. The plaintiff cannot now object that he did not have fair notice of what was necessary to successfully plead a § 1983 cause of action.

On this record we conclude that remanding the case to allow another pleading would do nothing but prolong the inevitable, and would only subject the defendants to exactly those hardships the immunity doctrine is supposed to relieve. We therefore reverse and direct the district court to render final judgment dismissing this § 1983 action. Furthermore, we instruct the district court to dismiss without prejudice the pendent state claim since no substantial federal claim continues to exist. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

REVERSED AND REMANDED FOR DISMISSAL.